Lillie Darlene PATE, Appellant,

v.

A.J. PATE, Appellee.

No. A14–93–00442–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 17, 1994.

Rehearing Overruled April 7, 1994.

Shawn Casey, Houston, for appellant.

Gerald W. Hoppas, Houston, for appellee.

Before MURPHY, ELLIS and JUNELL,* JJ.

## OPINION

ELLIS, Justice.

Lillie Darlene Pate, appellant, appeals a Clarification Order and a Qualified Domestic

* Justice Junell sitting by appointment of the Texas    Supreme Court.

Relations Order (QDRO) interpreting the divorce decree of her and her ex-husband, A.J. Pate, appellee. The parties were divorced by an agreed Decree of Divorce signed on October 6, 1982. As part of the division of the parties' property, appellant was awarded an interest in appellee's pension benefits accumulated through his employment with Tenneco Oil ("Tenneco"). Subsequent to the entry of the decree, the federal government enacted the Retirement Equity Act of 1984 which requires the entry of a QDRO to effectuate the payment of benefits awarded an employee's former spouse pursuant to a divorce decree. Tenneco advised appellant that it could not make the benefits payments without the QDRO and also requested that she get the decree clarified. Appellant then moved for a Clarification Order and QDRO, which the court entered. Appellant now appeals from those orders. We reverse and remand.

The pertinent part of the original divorce decree reads as follows:

> [Appellee] and [appellant] agree that [appellee] has accrued retirement benefits under his company's employment retirement program at Tenneco Oil (hereinafter referred to as Tenneco Retirement) which are community property of [appellee] and [appellant]. The Tenneco Retirement community benefit shall be determined by multiplying [appellee]'s total normal retirement benefit **at retirement** by this fraction:

$$\frac{\text{Months of Tenneco Retirement Credit Service During Marriage}}{\text{Months of Total Past \& Future Tenneco Retirement Credit Service}}$$

> It is acknowledged by the parties that [appellee] accumulated 256 months of Tenneco Retirement credited service during the marriage. **[Appellant] is hereby awarded an amount equal to one-half (1/2) of the above fraction multiplied times the gross amount of *each and every Tenneco Retirement payment, if, as, and when paid by the company.*** All the rest and remainder of said benefits are hereby awarded to [appellee].

(Emphasis added). The above passage appears twice in the decree. Once in the sec-

tion setting forth appellee's award, and again in the section setting forth appellant's award.

The trial court issuing the Clarification and QDRO orders found in its findings of fact that the intent of the parties was to divide the community interest accumulated in the retirement plan *during their marriage.* The court also found that appellee's total months of retirement credit service was 379 and that, as of the time of divorce, appellee's monthly life annuity payable at age 65 was $935.54. The court then ordered that appellant was entitled to 50% of each benefit of appellee *"accrued through the date of divorce (without increase for subsequent service or salary increases)...."*

Appellant asserts six points of error. First, the trial court erred as a matter of law in substantively changing the express terms of the decree by granting appellant something other than her original interest because such change is barred by Tex.Fam.Code Ann. § 3.71(b). Second, the trial court erred as a matter of law in substantively changing the express terms of the decree because such change is barred by the doctrine of res judicata. Third, the trial court erred when it awarded appellant 50% of those retirement benefits earned by appellee as they existed on the date of divorce because the evidence is legally insufficient, and in the alternative, factually insufficient, to support the award. Fourth, the trial court erred in allowing appellee to raise contractual defenses to the decree ten years subsequent to its entry because such attacks constitute impermissible collateral attacks on the final judgment. Fifth, the trial court erred as a matter of law, or alternatively abused its discretion, in not awarding appellant reasonable attorney's fees pursuant to Tex.R.Civ.P. 131 and/or Tex. Civ.Prac. & Rem.Code Ann. § 38.001 and/or pursuant to Tex.Fam.Code Ann. § 3.77. Sixth, that the trial court erred as a matter of law, or alternatively abused its discretion, in not allowing appellant the right to decide when and in what form she can receive the benefits.

Tex.Fam.Code Ann. § 3.71(b) (Vernon 1993) states:

An order under this section that amends, modifies, alters or changes the actual substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court to enter and is unenforceable.

■ Appellee responds with two arguments: First, that § 3.71(b) does not apply because the trial court did not *change* the original decree, it merely *interpreted* it. Second, that there was a mutual mistake at the time the parties agreed on the decree. In his first contention, appellee relies on the language in the original decree referring to the "community benefit." He argues that this language indicates that the parties intended only to divide those benefits accumulated during marriage. According to appellee's reasoning, since this was the actual intent of the parties, the court's order did not change what they originally intended to divide, but merely clarified it. However, the decree specifically states that the "community benefit shall be determined by multiplying [appellee]'s normal retirement benefit *at retirement*" by the fraction set out above. This language unambiguously indicates that all of the benefits accrued after the time of divorce will be included in the calculation of appellant's share. If the parties had intended otherwise, they would have replaced the phrase, "at retirement" with "at divorce."

■ Second, appellee contends that there was a mutual mistake at the time the decree was agreed upon. Agreed judgments, once rendered, are contracts between the parties that excuse error and operate to end all controversy between the parties. *Boyett v. Boyett,* 799 S.W.2d 360, 362 (Tex.App.—Houston [14th Dist.] 1990, no writ) (citing *Wagner v. Warnasch,* 156 Tex. 334, 295 S.W.2d 890, 893 (1956)). However, agreed judgments can be reformed for mutual mistake in the underlying agreement. *Boyett,* 799 S.W.2d at 362. To be entitled to reformation of the original judgment, the party advocating mistake must prove that there has been "a definite agreement between the parties that has been misstated in the written memorandum because of a mistake common to both contracting parties." *See id.* (quoting *Champlin Oil & Refining Co. v.*

*Chastain,* 403 S.W.2d 376, 382 (Tex.1965)). Since the law of contracts governs marital property agreements even when incorporated into divorce decrees, resolution of any ambiguity turns on the intentions of the parties and the surrounding circumstances. *Boyett,* 799 S.W.2d at 362. Thus, appellee must prove that he and appellant intended to divide the benefits as accumulated at the time of divorce as opposed to at the time of retirement. The only evidence brought forth by appellee to this effect is the following testimony by appellant:

Q. Mrs. Pate, at the time of the division—at the time of the entry of this Order, the negotiations leading up to the entry of this Order, you sought with your attorney and with the help of your, or through your husband's attorney, *to settle the issue of the community property interest in the retirement plan, did you not?*

A. That's correct.

(Emphasis added).

The only thing proven from this testimony is that appellant intended that the community property interest be clarified. Appellee has failed in his burden to prove mutual mistake and the agreed divorce decree is binding. For all of the reasons stated, we sustain appellant's first through fourth points of error.

Appellant's fifth point of error concerns attorney's fees. Since appellant was not a successful party at the trial court level, the trial court was not presented with the issue of whether to award appellant attorney's fees. As a result of our reversal, appellant is now the successful party, and on remand the court should consider attorney's fees pursuant to TEX.FAM.CODE ANN. § 3.77 (Vernon 1993).

■ In her sixth point of error, appellant claims that the trial court erred, or alternatively abused its discretion, in not allowing her the right to decide when and in what form she can receive the benefits. Appellee argues that this point is waived because it was brought up for the first time on appeal. However, appellant did argue this point in her motion for new trial, thus, error is pre-

served. The trial court ordered that the Tenneco Plan will pay the benefits directly to appellant *if, as, and when such benefit actually becomes payable to [appellee].* The original divorce decree, however, states that appellant is awarded the payments *if, as and when paid by the company.*

Appellant first argues that the Employee Retirement Income Security Act of 1974 (ERISA) requires QDRO plans to offer benefit payments to alternate payees, such as appellant, in the same forms as would be available to participants, like appellee, citing 29 U.S.C. § 1056(d) and 26 U.S.C. § 414(p)(2). What those sections actually say is that an order will still qualify as a QDRO even though it requires that payment of benefits be made to the alternate payee on or after the date of the participant's "earliest retirement age," as if the participant had retired on the date on which payment is to begin under the order. In other words, a QDRO *may* allow an alternate payee to chose to receive her benefits at the "earliest retirement age" of the participant, regardless of when the participant chooses to receive his benefits.

However, under Family Code § 3.71(b), a QDRO, like any other order, cannot change or amend a final decree of divorce. Thus, the QDRO in this case must be consistent with the agreed divorce decree. This leads to appellant's second argument: there is no language in the decree that requires payment to be made to appellee in order for her to receive her payments. According to appellant, since the language reads, "if, as and when *paid by the company,*" she can dictate when the company should pay her share. We hold that the language in the decree unambiguously requires that appellant receive her benefits if, as and when appellee is paid his benefits by the company. Appellant's sixth point of error is overruled. We remand to the trial court to enter a QDRO and a Clarification Order consistent with this opinion.

Accordingly, the judgment of the trial court is reversed and remanded.